## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **DANIEL WATKINS and JENNIFER** | § | |
| **SANCHEZ**, *on behalf of themselves* | § | |
| *and all others similarly situated*, | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-CV-2136-L-BH** |
| | § | |
| **GATEWAY FIRST BANK,** *itself and as* | § | |
| *successor by merger to Gateway Mortgage* | § | |
| *Group, LLC*, | § | |
| **Defendant.** | § | **Referred to U.S. Magistrate Judge**[1] |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendant's Motion to Dismiss*, filed October 13, 2020 (doc. 12).  Based on the relevant filings and applicable law, the motion should be **GRANTED in part**.

## I.  BACKGROUND

On August 12, 2020, Daniel Watkins and Jennifer Sanchez, on behalf of themselves and a proposed class of similarly-situated individuals (Plaintiffs), filed this class action complaint against Gateway First Bank, itself and as successor by merger to Gateway Mortgage Group, LLC (Defendant), asserting claims for violation of the Texas Debt Collection Act (TDCA) and breach of contract. (doc. 1 at 1.)[2]  The claims against Defendant arise from the "pay-to-pay" fees it charges Plaintiffs for paying their mortgage payments online or over the telephone. (*Id.* at 1-2.)  Plaintiffs allege that they are citizens of Texas, and that Defendant is incorporated and has its principal place

---

[1] By *Standard Order of Reference* filed October 5, 2020 (doc. 11), this case has been referred for full case management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

of business in Oklahoma. (*Id.* at 2.)  They claim Defendant "conducts business in the State of Texas, including servicing Plaintiffs' and other borrowers' mortgages." (*Id.* at 3.)

On August 9, 2016, Sanchez executed a deed of trust in Texas that granted Defendant a security interest in real property located in San Angelo, Texas, to secure repayment of a FHA loan. (*See* doc. 1-1.)  It defines "Lender" as Defendant, "organized and existing under the laws of Oklahoma" with a Tulsa, Oklahoma address, and states that it was prepared by Defendant in Tulsa, Oklahoma.  (*Id.* at 2-3.)  The deed of trust provides that it "shall be governed by federal law and the law of the jurisdiction in which the Property is located," and that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (*Id.* at 9-10.)  Payments due under the note are to be sent to the address in Tulsa, Oklahoma. (*Id.* at 4-5.)  The deed of trust was filed with the County Clerk in Tom Green County, Texas, on August 11, 2016. (*Id.* at 14.)

On June 16, 2017, Watkins executed a deed of trust in Texas that granted Defendant a security interest in real property located in Dallas, Texas, to secure repayment of a home equity loan. (doc. 1-2.)  It defines "Lender" as Defendant, "organized and existing under the laws of Oklahoma" with an address in Jenks, Oklahoma, and states that the instrument was prepared there by Defendant. (*Id.* at 2-3.)  It also provides that it "shall be governed by federal law and the laws of Texas," and that "Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law." (*Id.* at 9-10.)  Payments due under the note are to be sent to the address in Jenks, Oklahoma. (*Id.* at 4.)  The deed of trust was filed with the County Clerk in Dallas County, Texas, on June 22, 2017. (*Id.* at 15.)

Plaintiffs allege that they and other borrowers "gave deeds of trust to secure the notes they took out to purchase or refinance their homes in the State of Texas," and Defendant violated the

TDCA by collecting or attempting to collect pay-to-pay fees that were not "expressly authorized by the agreement creating the obligation or legally chargeable to" them. (doc. 1 at 13.)  They also allege that Sanchez and other borrowers "have FHA-insured security instruments that are or were serviced by" Defendant, and that it "improperly collected Pay-to-Pay fees from its borrowers contrary to the express terms of their contracts." (*Id.* at 14.)  Plaintiffs assert claims for violations of the TDCA and for breach of contract, and seek an order certifying a class action under Fed. R. Civ. P. 23, declarations that Defendant has wrongfully kept benefits that are due and owed to them and members of the class, injunctive relief, attorneys' fees and costs, damages, and pre- and post-judgment interest. (*Id.* at 15.)

According to the declaration of its Senior Vice President of Consumer Care, Defendant "is an Oklahoma chartered banking corporation . . . with its principal place of business in Jenks, Oklahoma" and "is at home in Oklahoma where it was formed and is headquartered." (doc. 14-1 at 1.)  Although it may conduct business in states outside of Oklahoma, Defendant "collects payments from customers at its headquarters in Jenks, Oklahoma." (*Id.*)  Servicing of loans, "including the handling of mortgage payments, interest, and fees, occur[s] in Oklahoma," and "[a]ll payments made through [its] automated payment systems are received in Jenks, Oklahoma." (*Id.*)

> Accordingly, telephone calls from Gateway's customers seeking to pay their loan obligations over the phone to a Gateway representative are received and handled through Gateway's payment agents located in Jenks, Oklahoma. When a customer calls Gateway to make a payment on his/her loan obligations, Gateway's payment agents receive the calls, accept payments, assess interest and fees, including fees to pay loan obligations over the phone, and service the customer's loan all from the payment agent's location in Jenks, Oklahoma. Gateway services all telephonic payments and assesses any related fees through its payment agents all located in Jenks, Oklahoma. All of Gateway's activities related to the assessment and receipt of fees arising from telephone payments occur in Oklahoma.

(*Id.* at 2.)

Defendant moves to dismiss this action for lack of personal jurisdiction, or alternatively, for failure to state a claim. (docs. 12-14.)  Plaintiffs responded on November 17, 2020, and Defendant replied on December 4, 2020 (docs. 18, 19).

## II.  RULE 12(b)(2)

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-74 (1985); *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (per curiam). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent as a state court in the same forum.  *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984); *see also* Fed. R. Civ. P. 4(e)(1), 4(h)(1).   Because the Texas long-arm statute authorizes the exercise of personal jurisdiction to the extent allowed by the due process clause of the Fourteenth Amendment, only the federal due process inquiry need be addressed.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.* "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice."  *Panda Brandywine Corp.*, 253 F.3d at 867.

The "minimum contacts" prong of the analysis is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the

benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). There are two types of minimum contacts: those giving rise to general jurisdiction and those giving rise to specific jurisdiction. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 3091 (2011). General jurisdiction exists where the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Alpine View Co. Ltd. v. Atlas Copso AB*, 205 F.3d 208, 215 (5th Cir. 2000). Specific jurisdiction is appropriate where the nonresident has purposefully directed its activities at the forum state and the "litigation results from alleged injuries that arise out of or relate to those activities." *Alpine View Co. Ltd.*, 205 F.3d at 215 (quoting *Burger King Corp.*, 471 U.S. at 472) (quotations omitted). It is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The plaintiff has the burden of establishing minimum contacts. *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989).

Where, as here, no evidentiary hearing is conducted, the plaintiff need only make a *prima facie* showing in support of jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 381 (5th Cir. 2003). The plaintiff's uncontroverted factual allegations in the complaint must be accepted as true, and all factual disputes contained in the parties' affidavits must be resolved in his favor. *Alpine View Co., Ltd.*, 205 F.3d at 215; *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990). Courts are not required "to credit conclusory allegations, even if uncontroverted," however. *Panda Brandywine Corp.*, 253 F.3d at 869.

5

A.    <u>**General Jurisdiction**</u>

As noted, a court may assert general jurisdiction over a nonresident defendant when its contacts are substantial, continuous, and systematic. *Central Freight Lines Inc.*, 322 F.3d at 381 (citing *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414). As reaffirmed by the Supreme Court, these contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011); *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The Fifth Circuit has "consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston v. Multidata Systems Int'l. Corp.,* 523 F.3d 602, 610-11 (5th Cir. 2008). In determining whether general jurisdiction exists, courts do not examine each of a nonresident's contacts with the forum state in isolation from one another, but examine them "*in toto* to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 779 (5th Cir. 1986). "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required .... [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018) (quoting *Johnston*, 523 F.3d at 609-10).

Here, Defendant is an Oklahoma-chartered banking corporation with its principal place of business in Jenks, Oklahoma. (doc. 14-1 at 1.) While it may conduct business outside of Oklahoma, all of its servicing operations occur in Oklahoma, and all payments it collects from its customers, whether through an automated payment system or over the telephone, are received in Oklahoma. (*Id.*

at 1-2.)  Plaintiffs have not disputed Defendant's evidence regarding its lack of contacts with Texas, and they make no allegations that Defendant is "at home" in Texas.  (*See* doc. 12.)  Their conclusory allegation that Defendant conducts business in Texas by servicing their and other borrowers' mortgages is not sufficient to meet their burden. *Panda Brandywine Corp.*, 253 F.3d at 869.

Because Plaintiffs have alleged no facts showing that Defendant made any contacts with Texas—substantial, continuous, systematic, or otherwise, they have failed to make a *prima facie* showing of general jurisdiction against Defendant.  *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 922.

**B.**     **Specific Jurisdiction**

Specific jurisdiction over a non-resident defendant exists when a plaintiff's claims against the defendant arise out of or relate to activities that the defendant purposefully directed at the forum state. *Burger King Corp.*, 471 U.S. at 472.  The specific jurisdiction analysis "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  Specific jurisdiction is a claim-specific inquiry and requires less pervasive contacts with the forum state than general jurisdiction. *McFadin*, 587 F.3d at 759 (5th Cir. 2009).

Plaintiffs' claims against Defendant are based on the pay-to-pay fees they have paid to it when paying their mortgage payments online or over the phone.  (doc. 1 at 2.)  They allege that they "gave deeds of trust to secure the notes they took out to purchase or refinance their homes in the State of Texas," and that the pay-to-pay fees it collected from them violated the TDCA[3] as well as

---

[3]The TDCA "prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers." *Merryman v. JPMorgan Chase & Co.*, No. 3:12-CV-2156-M, 2012 WL 5409735, at *4 (N.D. Tex. Oct. 12, 2012), *adopted by* 2012 WL 5409749 (N.D. Tex. Nov. 5, 2012).  To assert a claim under the TDCA, a claimant must show: (1) the debt is a consumer debt; (2) the defendant is a debt collector, as defined

the terms of Sanchez's deed of trust. (*Id.* at 13-14.)  Plaintiffs provide evidence that the deeds of

trust on their Texas homes were executed in Texas and governed by Texas law.  (*See* docs. 1-1, 1-2.)

It is well-established that merely entering in a contract with a resident of the forum state is

not sufficient to support personal jurisdiction. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379

F.3d 327, 344 (5th Cir. 2004). Nor is the combination of entering into a contract with a resident

defendant and engaging in activities incidental to the performance of a contract, such as mailing

payments to a resident defendant and corresponding extensively with a resident defendant sufficient

to establish specific jurisdiction. *See Brammer v. Eng'g, Inc. v. E. Wright Mountain L.P.*, 307 F.

App'x 845, 847-48 (5th Cir. 2009) (per curiam) (finding that activities incidental to the performance

of a contract are insufficient to constitute purposeful availment or establish minimum contacts

necessary to support personal jurisdiction); *see Freudensprung*, 379 F.3d at 345 (finding that

purchasing the services of a resident via a contract, initiating a long-term business relationship with

that resident, communicating with that resident regarding the development and execution of the

contract, and wiring money to that resident in Texas did not indicate that the defendant intended to

avail itself of the privilege of doing business in Texas).  In *Holt Oil & Gas Corp. v. Harvey*, 801

F.2d 773, 778 (5th Cir. 1986), the defendant's contacts with Texas relating to the claims alleged in

the lawsuit were that (i) it entered into a contract with plaintiff, a Texas corporation, (ii) it sent a

final agreement from Oklahoma to Texas, (iii) it sent three payments to Texas, and (iv) it engaged

in extensive telephonic and written communications with plaintiff. 801 F.2d at 778.  The court found

that these contacts were "limited" and did not support the exercise of specific jurisdiction. *Id.*  Given

---

under the TDCA; (3) the defendant committed a wrongful act in violation of the TDCA; (4) the wrongful act was
committed against the plaintiff; and (5) the plaintiff was injured as a result of the defendant's wrongful act. *See* Tex. Fin.
Code §§ 392.001-.404.

that the material performance of the contract was centered outside of the forum state, the fact that defendant mailed payments to the forum state did not weigh heavily in its determination. *Id.* at 778. It noted that "merely contracting" with a resident of Texas and communicating with Texas "in the course of developing and carrying out the contract was in itself" insufficient to "constitute purposeful availment of the benefits and protections of Texas law." *Id.*

Similarly, in *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985), the court looked to "factors of prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing" in order to determine whether the defendant had sufficient contacts. 772 F.2d at 1193. In that case, (i) the defendant entered into a contract with Texas residents; (ii) the defendant shipped ski bindings to plaintiffs in Texas; (iii) the defendant or his attorneys and the plaintiffs exchanged letters and telephone calls regarding the assignment and reissuance of the subject patent; (iv) the contract included a choice-of-law provision that anticipated application of Texas law; (v) the defendant's corporation advertised and shipped its products to Texas; and (vi) defendant's corporation marketed the modified bindings in Texas. *Id.* at 1192. The court found that the defendant's shipments of two bindings to the plaintiffs in Texas was of little weight, and the communications between the defendant and plaintiffs leading up to the contract, whether originating in Texas or California, were insufficient to confer jurisdiction. *Id.* at 1193-94. It noted that the quality of contacts is the issue when determining purposeful availment, not the number of contacts. *Id.* at 1194. Finally, the court found that the defendant's mailing of payments to the plaintiffs in Texas was insignificant to its determination. *Id.* Considering the totality of circumstances, it concluded that the defendant did not have the minimum contacts necessary to establish jurisdiction over defendants. *Id.*

As in *Holt* and *Stuart*, Defendant contracted with Texas residents and engaged in communications with Plaintiffs relating to the performance of the deeds of trust, neither of which indicate that it intended to avail itself of doing business in Texas. The deeds of trust were executed by Plaintiffs in Texas, but there are no allegations that Defendant appeared in Texas in connection with the negotiation or execution of the deeds of trust. Further, the evidence shows that Defendant prepared the deeds of trust in Oklahoma. While both deeds of trust contain a choice of law provision for Texas, a governing law clause standing alone is insufficient to confer jurisdiction. *See Burger King*, 471 U.S. at 482; *Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1069 (5th Cir. 1992) (explaining that a choice of law provision is a relevant factor for determining purposeful availment but is not necessarily determinative).

Plaintiffs claim that Defendant also sent statements to them in Texas ,and that they paid their mortgage and pay-to-pay fees to it from Texas, but these allegations were not asserted in the complaint and are not supported by evidence. *See Earle v. Aramark Corp.*, No. CIV.A.3:03-CV-2960-K, 2004 WL 1879884, at *2 (N.D. Tex. Aug. 16, 2004) ("In its response to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff cannot stand on its pleadings, but must, through affidavits or otherwise, set forth specific facts demonstrating that the Court has jurisdiction.") (citation omitted). Nevertheless, they are not sufficient to establish sufficient minimum contacts for purposes of specific jurisdiction. *See Freudensprung*, 379 F.3d at 345 (finding communications with a Texas resident regarding the development and execution of the contract and the wiring money to that resident in Texas did not indicate that defendant intended to avail itself of the privilege of doing business in Texas).

Plaintiffs argue that if there was a default under the deeds of trust, foreclosure on the

properties would "necessarily take place in Texas, subject to the provisions of the Texas Property Code." (doc. 18 at 17.)  Plaintiffs' claims do not arise from a foreclosure in Texas, but from the pay-to-pay fees that Defendant collects from them and other borrowers.  As discussed, it is undisputed that these fees were received by Defendant in Oklahoma. (*See* doc. 14-1 at 1.)  Plaintiffs have not shown or even alleged that Defendant collected any of these fees in Texas, or that any of its alleged conduct in violation of the TDCA or the terms of the deeds of trust occurred in Texas. *See Pervasive Software Inc. v. Lexware BmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (finding lack of personal jurisdiction in a dispute over payment of license fees where the allegedly breaching acts occurred outside Texas).

Plaintiffs rely on *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009), to argue that personal jurisdiction over Defendant is proper given that the debtor-creditor relationship between the parties is centered in Texas and is based upon contracts with a strong relationship to Texas. (doc. 18 at 16-17.)  In *Mullins*, a Texas creditor asserted a fraudulent transfer claim against a nonresident defendant, alleging that it thwarted the creditor's right to payment under contracts governing the sale of a Texas company that were executed in Texas and were expressly governed by Texas law. 564 F.3d at 402.  Although not a party to the contracts, the nonresident defendant was closely affiliated with the debtor and had extensive knowledge of the contracts and the Texas-centered debtor-creditor relationship that it formed.  The Fifth Circuit applied the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984), and held that specific jurisdiction over the nonresident defendant was established because it "should reasonably have anticipated being haled into a Texas court for precipitating and directing an alleged fraudulent transfer at the expense of a known, major creditor in Texas whose right to payment arises out of contracts that share a strong connection with Texas." *Id.*  Under

11

*Calder*, "an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* at 400 (quoting *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)).   The court concluded that the nonresident defendant's actions in "engineering a transfer that knowingly impaired the rights of a Texas resident under agreements centered in Texas substantiates that he purposefully aimed his intentionally tortious conduct at the forum state." *Id.* at 403.  Plaintiffs do not assert an intentional tort claim against Defendant, however.  They have not cited any cases where the *Calder* effects test was extended to claims for violations of the TDCA or for breach of contract.  *See McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009) (applying the *Calder* effects test to plaintiffs' tort claims but not their contract claim).

Plaintiffs have failed to make a *prima facie* showing of specific jurisdiction against Defendant.[4]  Because they have failed to meet their burden, Defendant's motion to dismiss for lack of personal jurisdiction should be granted.[5]

## III.  RECOMMENDATION

Defendant's motion to dismiss for lack of personal jurisdiction should be **GRANTED**, and its motion to dismiss for failure to state a claim should be **DENIED as moot**.  All of Plaintiffs' claims against it should be **DISMISSED without prejudice** for lack of personal jurisdiction.

---

[4]Because Defendant does not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. *See Southern Copper, Inc. v. Specialloy, Inc.*, No. 00-50408, 2000 WL 1910176, at *4 (5th Cir. Dec. 22, 2000) (per curiam); *Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 329 n. 20 (5th Cir. 1996).

[5]Because Defendant's motion should be granted for lack of personal jurisdiction, it is unnecessary to reach its alternative grounds for dismissal under Rule 12(b)(6) for failure to state a claim. (*See* doc. 13 at 19-29.)

**SO RECOMMENDED** on this 15th day of March, 2021.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE